IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH

| | | |
|---|---|---|
| SYPHERD ENTERPRISES, INC., A DOMESTIC CORPORATION; | ) ) ) | 2:18-CV-00141-MJH |
| Plaintiff, | ) ) ) | |
| vs. | ) ) ) | |
| AUTO-OWNERS INSURANCE COMPANY, A FOREIGN CORPORATION; | ) | |
| Defendant, | | |

OPINION

Plaintiff, Sypherd Enterprises Inc ("Sypherd"), brings the within action against Defendant, Auto-Owners Insurance Company ("Auto-Owners"), for claims of Breach of Contract and Bad Faith pursuant to 42 Pa.C.S. § 8371 arising from a water damage claim on Sypherd's property. Auto-Owners moves for summary judgment pursuant to Fed. R. Civ. P. 56. (ECF No. 43). The parties provided briefs, appendices, and concise statements of material facts (ECF Nos. 44, 45, 46, 47, 48, and 49), and the matter is now ripe for decision.

For the following reasons, Auto-Owners' Motion for Summary Judgment will be granted.

I.  **Background**

Sypherd operates a restaurant/grill/tavern known as the Souper Bowl located at 910 5th Avenue, Pittsburgh, Pennsylvania. (ECF No. 46 at ¶ 3). On November 29, 2016, the Souper Bowl suffered property damage when a "water supply pipe in the immediate vicinity of Plaintiff's 5th Avenue premises failed and/or burst, causing a large quantity of water to flow into and around the premises." *Id.* at ¶¶ 2, 12, 22-23. Mr. Sypherd testified that he noticed water coming out of his pipes, walls, toilets, and drains. (ECF No. 47-1 at p. 49). He also testified that

the drain in the basement of the premises was "totally clogged." *Id.* The Pittsburgh Water and Sewer Authority ("PWSA") performed the repairs to the broken water line.[1] (ECF No. 46 at ¶ 25). Sypherd subsequently sought coverage for the water damage under its Policy with Auto-Owners. Following the incident, Dave Barr, a claims adjuster, inspected the Souper Bowl on behalf of Auto-Owners and reported that the damage was caused by surface water from the water main break leaking through the back wall of the building. *Id.* at p. 24-25. On December 2, 2016, Auto-Owners denied coverage based upon the following coverage exclusions in its Policy:

> CAUSES OF LOSS-SPECIAL FORM
>
> B. EXCLUSIONS
>
> 1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.
>
> \*\*\*
>
> g. Water
>
> > (1) Flood; surface water, waves (including tidal wave and tsunami), tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind (including storm surge);
> > (2) Mudslide or mudflow;
> > (3) Water that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump, or related equipment;
> > (4) Water under the ground surface pressing on, or flowing or seeping through;
> > > (a) Foundations, walls, floors or paved surfaces;
> > > (b) Basements, whether paved or not; or
> > > (c) Doors, windows or other openings;
>
> Or

---

[1] Sypherd has filed a separate lawsuit for the above damages against PWSA in the Allegheny County Court of Common Pleas. (ECF No. 47-1 at p. 6).

> (5) Waterborne material carried or otherwise moved by any of the
> water referred to in Paragraph (1), (3) or (4), or material carried
> or otherwise moved by mudslide or mudflow.
>
> This exclusion applies regardless of whether any of the above, in
> Paragraphs g.(1) through (5) is caused by an act of nature or is otherwise
> caused.

(ECF No. 47-1 at p. 18). While not cited in Auto-Owners's denial letter, the Policy contains an endorsement which deletes subparagraph g(3). *Id.* at p. 23. In its Answer, Auto-Owners also cited to additional portions of the policy as a basis to deny coverage:

> e. Utility Services
>
> The failure of power, communication, water or other utility service supplied to the described premises, however caused, if the failure:
>
> (1) Originates away from the described premises; or
> (2) Originates at the described premises, but only if such failure involves equipment used to supply the utility service to the described premises from a source away from the described premises.
>
> Failure of any utility service includes lack of sufficient capacity and reduction in supply. Loss or damage caused by a surge of power is also excluded, if the surge would not have occurred but for an event causing a failure of power.
>
> However, if the failure or surge of power, or the failure of communication, water or other utility service, results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss. Communication services include but are not limited to service relating to Internet access or access to any electronic, cellular or satellite network.

*Id.* at 16.

## II. Standard of Review

Summary judgment may only be granted where the moving party shows that there is no genuine dispute about any material fact, and that judgment as a matter of law is warranted. Fed. R. Civ. P. 56(a). Pursuant to Federal Rule of Civil Procedure 56, the court must enter summary judgment against a party who fails to make a showing sufficient to establish an element essential

3

to his or her case, and on which he or she will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In evaluating the evidence, the court must interpret the facts in the light most favorable to the nonmoving party, drawing all reasonable inferences in his or her favor. *Watson v. Abington Twp.*, 478 F.3d 144, 147 (3d Cir. 2007).

In ruling on a motion for summary judgment, the court's function is not to weigh the evidence, make credibility determinations, or determine the truth of the matter; rather, its function is to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000) (citing decisions); *Anderson v. Liberty Lobby*, 477 U.S. 242, 248–49 (1986); *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 643 n. 3 (3d Cir. 1998). The mere existence of a factual dispute, however, will not necessarily defeat a motion for summary judgment. Only a dispute over a material fact—that is, a fact that would affect the outcome of the suit under the governing substantive law—will preclude the entry of summary judgment. *Liberty Lobby*, 477 U.S. at 248.

### III. Discussion

#### A. Breach of Contract Claim

*i. Standard for Policy Interpretation*

Count I of the Complaint alleges that Auto-Owners breached its contract with Sypherd by denying coverage for water damage to its property. "Insurance policies are contracts, and the rules of contract interpretation provide that the mutual intention of the parties at the time they formed the contract govern its interpretation." *Am. & Foreign Ins. Co. v. Jerry's Sports Ctr., Inc.*, 606 Pa. 584, 2 A.3d 526, 540 (2010) (citations omitted). "It is well-established that three elements are necessary to plead a cause of action for breach of contract: (1) the existence of a

contract, including its essential terms, (2) a breach of the contract, and (3) resultant damages." *Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P. C.*, 635 Pa. 427, 137 A.3d 1247, 1258 (2016) (citations omitted). "The interpretation of an insurance contract regarding the existence or non-existence of coverage is generally performed by the court." *Minnesota Fire & Cas. Co. v. Greenfield*, 579 Pa. 333, 344, 855 A.2d 854 (2004) (internal citations and quotation marks omitted). The court must consider the terms as set out and if it finds the language clear and unambiguous, then it "must give effect to that language." *Zurich Am. Ins. Co. v. R.M. Shoemaker Co.*, 2012 WL 895451, at *4 (E.D. Pa. Mar. 16, 2012), aff'd, 519 Fed.Appx. 90 (3d Cir. 2013). The Third Circuit further explains that "[e]xclusions from coverage contained in an insurance policy will be effective against an insured if they are clearly worded and conspicuously displayed, irrespective of whether the insured read the limitations or understood their import." *Pacific Indem. Co. v. Linn*, 766 F.2d 754, 760 (3d Cir. 1985) (citing *Standard Venetian Blind Co. v. Am. Empire Ins. Co.*, 503 Pa. 300, 469 A.2d 563, 567 (1983)). An ambiguity exists "when the questionable term or language, viewed in the context of the entire policy, is 'reasonably susceptible of different constructions and capable of being understood in more than one sense.'" *J.C. Penney Life Ins. Co. v. Pilosi*, 393 F.3d 356, 365 (3d Cir. 2004) (quoting *Med. Protective Co. v. Watkins*, 198 F.3d 100, 103 (3d Cir. 1999)). An ambiguous term must be "construed against the insurer, in favor of the insured." *Meyer*, 648 F.3d at 163–164. Where there is no ambiguity, the court must give full effect to the plain meaning of the policy language. *Id.*

Auto-Owners argues that the allegations in the Complaint and Sypherd's testimony support two exclusions enumerated in the policy, the Utility Services and Water exclusion. Auto-Owners contends that Sypherd cannot support a breach of contract claim and either

5

exclusion should apply. Sypherd responds that the Court should deny summary judgment because the asserted exclusions are ambiguous.

*ii.    Utility Services Exclusion*

Auto-Owners contends that the Utilities Services Exclusion entitles it to summary judgment on the breach of contract claim because the water damage derived from a water main break. The Policy provides for "EXCLUSIONS" as follows:

e. Utility Services

The failure of power, communication, water or other utility service supplied to the described premises, however caused, if the failure:

(1) Originates away from the described premises; or
(2) Originates at the described premises, but only if such failure involves equipment used to supply the utility service to the described premises from a source away from the described premises.

Failure of any utility service includes lack of sufficient capacity and reduction in supply. Loss or damage caused by a surge of power is also excluded, if the surge would not have occurred but for an event causing a failure of power.

However, if the failure or surge of power, or the failure of communication, water or other utility service, results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss. Communication services include but are not limited to service relating to Internet access or access to any electronic, cellular or satellite network.

(ECF No. 45 at p. 16). Auto-Owners contends that the Exclusion applies as long as the water damage originates away from the insured's premises. However, Sypherd argues that this exclusion does not exist because a "Utility Services Failure" endorsement contained within Sypherd's Auto-Owners policy, changed the exclusion language. Said "Utility Services Failure" endorsement, provides as follows:

Under CAUSES OF LOSS-SPECIAL FORM, B. EXCLUSIONS, exclusion 1.e. Utility Services is deleted and replaced by the following:

e. Utility Services

6

> We shall not pay for loss or damage caused by or resulting from the failure to supply "communication supply services", "power supply services", or "water supply services" from any regional or national grid.

*Id.* at p. 24. Examining this endorsement in a light most favorable to Sypherd, the endorsement changes the Policy language from the Exclusion originally asserted in Auto-Owner's Answer. Therefore, in order for the Court to grant summary judgment, Auto-Owners must demonstrate that the replacement language in the "Utility Services Failure" endorsement applies to Sypherd's case. However, Auto-Owners does not address the endorsement or direct the Court to evidence that Sypherd's damages derived from any failure to supply "water supply services" to the premises. Neither the Policy nor case law defines "failure to supply 'water supply services.'" Therefore, the Court must resolve whether it can draw conclusions from a plain meaning or whether the terms are ambiguous. A plain meaning interpretation of the endorsement supports the conclusion that damages are limited to losses related to a "failure to supply water services' and not the failure of a water supply system such as a water main break. The language used in the Utility Services Exclusion concerns and covers damages for a failure of water supply and not for water damages caused by a water main break. Therefore, the instant case, involving a claim for damages caused by a water main break, does not trigger the Utility Services Exclusion. Accordingly, the Court will deny Auto-Owner's Motion for Summary Judgment on the basis of the Utility Service Exclusion.

    *iii.*    *Water Exclusion*

Auto-Owners contends that the Water Exclusion entitles it to summary judgment on the breach of contract claim because the water damage derived from surface water.

The Policy at issue provides for an Exclusion as follows:

B. Exclusions

7

> 1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.
>
> \*\*\*
>
> g. Water
>
>> (1) Flood; surface water, waves (including tidal wave and tsunami), tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind (including storm surge);
>> (2) Mudslide or mudflow;
>> (3) Water that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump, or related equipment;
>> (4) Water under the ground surface pressing on, or flowing or seeping through;
>>> (a) Foundations, walls, floors or paved surfaces;
>>> (b) Basements, whether paved or not; or
>>> (c) Doors, windows or other openings;
>>
>> Or
>>
>> (5) Waterborne material carried or otherwise moved by any of the water referred to in Paragraph (1), (3) or (4), or material carried or otherwise moved by mudslide or mudflow.
>
> This exclusion applies regardless of whether any of the above, in Paragraphs g.(1) through (5) is caused by an act of nature or is otherwise caused.

(ECF No. 47-1 at p. 18). As noted above, the Policy includes an endorsement that deletes subparagraph g(3). *Id.* at p. 23. In construing other policies, with language that is identical to the present case regarding water exclusions, courts have generally held that damage resulting from surface water due to water main breaks, falls within exclusions to deny coverage. *See Citi Gas Convenience, Inc. v. Utica Mut. Ins. Co.*, 2016 WL 492474 (E.D. Pa. Feb. 9, 2016) (surface water includes manmade water main breaks); *Pavuk v. State Auto Ins., Co.*, 1997 WL 43104, at \*4 (E.D. Pa. July 5, 1997) (holding that the water exclusion "clearly excludes coverage for water damage caused in whole or in part from non-domestic sources" regardless of whether the source

is natural or man-made); *Kozlowski v. Penn Mutual Ins. Co.*, 441 A.2d 388, 391 (Pa. Super. Ct. 1982) (holding that the water exclusion applied when the damage came from a water main break). As such, in the present case, the surface water penetrating into the building from the back wall as a result of the water main break qualifies as surface water, for which damage coverage is excluded under g(1).

Sypherd argues that the deletion of subparagraph g(3) places his loss within coverage, because Mr. Sypherd testified that water was backing up and overflowing in his drains and toilets, which is distinct from surface water described in g(1). *Id*. at p. 48. Therefore, Sypherd concludes that it could recover under the Policy with the g(3) exclusion removed. However, the Policy contains a "concurrent cause" provision, which states that "loss or damage shall be excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss." (ECF No. 47-1 at p. 17). Here, the damage that Sypherd claims came from backup and overflow from his drains and toilets, which constitute a concurrent cause of the claim in this case. Sypherd does not dispute that a "water supply pipe in the immediate vicinity of Plaintiff's 5th Avenue premises failed and/or burst, causing a large quantity of water to flow into and around the premises." (ECF No. 46 at ¶¶ 2, 12, 22-23). He further admitted that the water supply pipe that burst was not located on the property, that he observed water coming through the walls and openings of the building, and that the water originated from a water line break on the street abutting his building. *Id*. at ¶ 12, 22-23. Therefore, the water exclusion pursuant to g(1) applies under these facts, such that coverage under the policy is excluded. Accordingly, Auto-Owner's Motion for Summary Judgment, regarding the breach of contract claim, will be granted.

## B. Bad Faith Claim

Count II of the Complaint alleges that Auto-Owners committed statutory bad faith because it unreasonably denied coverage to Sypherd for its water damage claim.

The Pennsylvania bad faith statute provides in its entirety:

In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:

(1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
(2) Award punitive damages against the insurer.
(3) Assess court costs and attorney fees against the insurer.

42 Pa.C.S.A. § 8371. To succeed on a bad faith claim, a plaintiff-insured must prove, by clear and convincing evidence: "(1) that the insurer did not have a reasonable basis for denying benefits under the policy; and (2) that the insurer knew of or recklessly disregarded its lack of a reasonable basis in denying the claim." *Nw. Mut. Life Ins. Co. v. Babayan*, 430 F.3d 121, 137 (3d Cir.2005); *Terletsky v. Prudential Prop. & Cas. Ins. Co.*, 437 Pa.Super. 108, 649 A.2d 680, 688 (1994). Although the term "bad faith" is not defined in the statute, courts have subsequently determined that a variety of carrier actions can constitute bad faith, including "a frivolous or unfounded refusal to pay, lack of investigation into the facts, or a failure to communicate with the insured." *Frog, Switch & Mfg. Co., Inc. v. Travelers Ins. Co.*, 193 F.3d 742, 751 n. 9 (3d Cir. 1999); see also *Terletsky*, 649 A.2d at 688. "The 'clear and convincing' standard requires that the plaintiff show that the evidence is so clear, direct, weighty and convincing as to enable a clear conviction, without hesitation, about whether or not the defendants acted in bad faith." *J.C. Penney Life Ins. Co. v. Pilosi*, 393 F.3d 356, 367 (3d Cir. 2004) (quoting *Bostick v. ITT Hartford Group, Inc.*, 56 F.Supp.2d 580, 587 (E.D.Pa. 1999)) (quotations omitted). "Thus, the plaintiff's burden in opposing a summary judgment motion is commensurately high in light of the

substantive evidentiary burden at trial." *Pilosi*, 393 F.3d at 367 (citing *Kosierowski v. Allstate Ins. Co.*, 51 F.Supp.2d 583, 588 (E.D.Pa. 1999)); see also *Anderson*, 477 U.S. 242, 248, 106 S.Ct. 2505 (1986) ("we conclude that the determination of whether a given factual dispute requires submission to a jury must be guided by the substantive evidentiary standards that apply to the case. This is true at both the directed verdict and summary judgment stages.").

Pennsylvania courts have held that "[r]esolution of a coverage claim on the merits in favor of the insurer requires dismissal of a bad faith claim premised on the denial of coverage." *Gold v. State Farm Fire & Cas. Co.*, 880 F.Supp.2d 587, 597 (E.D.Pa. 2012). "However, if bad faith is asserted as to conduct beyond a denial of coverage, the bad faith claim is actionable as to that conduct regardless of whether the contract claim survives." *Id.* at 598. This is because Section 8371 claims generally exist apart from the underlying contract claims. *See Polselli v. Nationwide Mut. Fire Ins. Co.*, 126 F.3d 524, 529 (3d Cir. 1997) (42 Pa.C.S. § 8371 provides an "independent cause of action to an insured that is not dependent upon success on the merits, or trial at all, of the contract claim") (quoting *Nealy v. State Farm Mut. Auto. Ins. Co.*, 695 A.2d 790, 792 (Pa.Super.Ct. 1997) (quotations omitted)); *Fabrikant v. State Farm Fire & Cas. Co.*, No. 3:11–CV–438, 2012 WL 1677293, at *10 (M.D.Pa. May 14, 2012) (granting summary judgment on breach of contract claim but also analyzing bad faith claim); *Moss Signs, Inc. v. State Auto. Mut. Ins. Co.*, No. 08–164, 2008 WL 892032, at *4 (W.D.Pa. Apr. 2, 2008) (holding that because bad faith was alleged in investigation and in denial of coverage, the plaintiff could "theoretically succeed on either or both" of the claims).

While the Court has resolved the coverage issue in favor of Auto-Owners, the Court will address whether Sypherd has presented sufficient evidence that its bad faith claim should survive. Courts have held that an insurer must "properly investigate claims prior to refusing to

pay the proceeds of the policy to its insured." *Gold v. State Farm Fire & Cas. Co.*, 880 F.Supp.2d 587, 597 (E.D.Pa. 2012) (quoting *Bombar v. W. Am. Ins. Co.*, 932 A.2d 78, 92 (Pa.Super.Ct. 2007)). "Bad faith also occurs when an insurance company makes an "inadequate investigation or fails to perform adequate legal research concerning a coverage issue." *Smith v. Allstate Ins. Co.*, 904 F. Supp. 2d 515, 524 (W.D. Pa. 2012) (citations omitted). Sypherd argues that Auto-Owners acted in bad faith because it performed an inadequate investigation into Sypherd's water damage claim. Sypherd contends that Auto-Owners failed to conduct a reasonable investigation because Dave Barr, who determined that the water entering the premises was ground water, conducted only a "brief" investigation. Sypherd contends that Mr. Barr never spoke to Mr. Sypherd and that Mr. Barr did not inspect the basement. Had Mr. Barr inspected more of the premises, Sypherd alleges that he would have discovered clogged drains and water coming through pipes. Therefore, Sypherd argues these facts would have led Auto-Owners to conclude that the water damage was covered under the policy. However, Sypherd acknowledges in its Complaint that the cause of a "water supply pipe in the immediate vicinity of Plaintiff's 5th Avenue premises failed and/or burst, causing a large quantity of water to flow into and around the premises." As the Court analyzed above, this undisputed evidence fits squarely within the Policy's g(1) water exclusion, and any concurrent cause of clogged drains or pipe backups would not have impacted the exclusion and the proper denial of coverage decision. (ECF No. 47-1 at p.17). Under these circumstances, any additional investigation would not have changed the outcome of Auto-Owner's decision to deny Sypherd's claim. Therefore, Sypherd has not produced sufficient evidence from which a reasonable jury could find by clear and convincing evidence that Auto-Owners performed an inadequate investigation or otherwise acted

in bad faith in its handling of Sypherd's claim. Thus, Auto-Owners Motion for Summary Judgment regarding Sypherd's bad faith claim will be granted.

IV. **Conclusion**

As discussed above, following consideration of Auto-Owner's Motion for Summary Judgment, the same will be granted, and Sypherd's case will be dismissed. In accordance with the above discussion, an appropriate order will follow.

BY THE COURT:

Marilyn J. Horan
United States District Judge